## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**MAGGIE HADLEIGH-WEST**                          **CIVIL ACTION**

**VERSUS**                                        **NO: 20-3437**

**SELECTIVE INSURANCE CO.**
**OF THE SOUTHEAST ET AL.**                       **SECTION "H"**


## ORDER AND REASONS

Before the Court are Defendant CNC Catastrophe & National Claims'
Motion for Summary Judgment (Doc. 37) and Motion to Strike Affidavit (Doc.
47); and Defendant Selective Insurance Co. of the Southeast's Motion for
Summary Judgment (Doc. 38) and Motion to Strike Affidavit (Doc. 50). For the
following reasons, the Motions are **GRANTED**.


## BACKGROUND

Plaintiff Maggie Hadleigh-West brings claims arising out of flood
damage allegedly sustained to her property as a result of Hurricanes Cristobal,
Beta, Zeta, and Tropical Storm Sally in 2020. Plaintiff alleges that at the time
of the damage, she had a flood insurance policy with Defendant Selective
Insurance Co. of the Southeast ("Selective"). She alleges that she reported the
flood damage to Selective and that Selective assigned Defendant CNC
Catastrophe & National Claims ("CNC") to handle her claim. She alleges that

1

CNC mishandled her flood insurance claim and made misrepresentations to her, such as that the damage was not covered by her policy, her claim would ultimately be resolved favorably, she did not need to submit a proof of loss, and her claims did not exceed the deductible.

Plaintiff brings a breach of contract and a bad faith claim against Selective. She brings claims for bad faith, intentional misrepresentation, negligent misrepresentation, and defamation against CNC. Each Defendant has separately moved for summary judgment dismissal of the claims against it. In addition, each moved to strike the affidavit that Plaintiff provided in support of her opposition to their summary judgment motions. The Court will consider each argument in turn.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1]  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[2]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[3]  "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden

---

[1] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).
[2] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[3] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).

shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[4]  Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[5]  "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[6] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[7] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[8]

## LAW AND ANALYSIS

### A. CNC and Selective's Motions to Strike Affidavit

At the outset, the Court must consider Defendants' Motions to Strike the affidavit that Plaintiff included in support of her opposition to their Motions for Summary Judgment. Defendants argue that the affidavit should be excluded pursuant to the sham affidavit doctrine. "The sham affidavit doctrine prevents a party who has been deposed from introducing an affidavit that contradicts that person's deposition testimony without explanation because 'a

---

[4] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[5] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
[6] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[7] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[8] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment.'"[9] That said, "not every discrepancy between a deposition and affidavit should result in exclusion of the affidavit," and slight inconsistencies may supplement or explain certain aspects of a party's deposition testimony.[10]

Here, Defendants point out several instances in which Plaintiff's affidavit contradicts her deposition testimony. For example, at her deposition she testified that a representative of CNC, Chris Jones, told her prior to the inspection of her home that he was "on her side" and would find in her favor. In her affidavit, however, she adds that Mr. Jones repeatedly stated that "he really worked for me," not the insurance company, and that he repeated these statements after the inspection of her home. Further, she testified that another representative, Lori Paliana, told her that if she filed a claim, she did not have to file a proof of loss. In her affidavit, however, she states that Ms. Paliana directed her not to file a proof of loss. Plaintiff's affidavit also includes new alleged misrepresentations made by other representatives of CNC that were not disclosed in her deposition. Finally, Plaintiff testified that she did not believe she submitted a damage estimate with her Proof of Loss, while her affidavit affirmatively represented that she did so. In addition, Plaintiff does not provide any explanation for these discrepancies. "[C]ourts typically require some explanation for an inconsistency between a deposition and affidavit."[11]

---

[9] Free v. Wal-Mart Louisiana, L.L.C., 815 F. App'x 765, 766 (5th Cir. 2020).
[10] *Id.*
[11] *Id.* at 767.

Accordingly, Defendants' Motions are granted, and Plaintiff's affidavit is stricken. This Court will consider only Plaintiff's deposition testimony in resolving Defendants' Motions for Summary Judgment.

## B. CNC's Motion for Summary Judgment

CNC moves for dismissal of each of Plaintiff's claims against it, arguing that she cannot show that it owed her a legal duty. This Court will consider each claim in turn.

### 1. Bad Faith

First, CNC argues that there is no legal basis for Plaintiff's claim of bad faith against it. Louisiana law provides remedies against insurers who arbitrarily fail to pay an insured's claims.[12] CNC argues that these laws do not apply to insurance adjusters, like CNC. Indeed, courts have held that the language of Louisiana Revised Statutes §§ 22:1892 and 1973 clearly impose a duty on insurers, not adjusters.[13] Plaintiff does not present any argument to the contrary. Accordingly, Plaintiff's bad faith claims against CNC are dismissed.

### 2. Intentional Misrepresentation

Plaintiff alleges that CNC intentionally misrepresented information to her during the course of adjusting her claim. CNC argues that, under Louisiana law, insurance adjustors do not owe a duty to adjust claims fairly and promptly. Here again, Louisiana Revised Statutes §§ 22:1892 and 1973

---

[12] LA. REV. STAT. §§ 22:1892, 1973.

[13] Riley v. Transamerica Ins. Grp. Premier Ins. Co., 923 F. Supp. 882, 888 (E.D. La. 1996), *aff'd sub nom.* Riley v. TIG Ins. Co., 117 F.3d 1416 (5th Cir. 1997); Toups v. State Farm & Cas. Co., No. CIV.A. 07-1068, 2007 WL 1030452, at *3 (E.D. La. Mar. 29, 2007) ("Neither of these statutes provides a remedy against an insurance adjustor.").

impose those duties on *insurers*. "With regard to insurance adjusters, Louisiana courts have consistently held that, as a general rule, an insurance adjuster owes no duty to an insured to properly investigate or handle claims, or advise an insured of coverage issues."[14] The duty to properly handle claims is imposed on insurers by §§ 22:1892 and 1973, not by the general tort duty set forth in Louisiana Civil Code article 2315.[15]

"There is, however, a narrow exception to the rule whereby an insurance adjuster who assumes an independent tort duty to the insured or commits fraud may be liable for breach of his or her duty."[16] An insurance adjuster may assume an independent tort duty where he, for example, provides the claimant with "false information regarding the potential success of the claim and has reason to know that the claimant will rely on that information."[17]

Plaintiff has not set forth any facts suggesting that any of the several people she spoke with at CNC engaged in fraud or undertook an independent tort duty to her. Her chief complaint is that CNC falsely claimed that the flood damage preexisted Plaintiff's ownership of the property and therefore was not covered by Selective's policy. Plaintiff's disagreement with CNC's "method of adjusting claims and ultimate claims decision cannot form the basis of a claim against [it] under Louisiana law."[18]

---

[14] Sullivan v. Travelers Indem. Co. of Conn., No. CV 16-15461, 2016 WL 6995139, at *2 (E.D. La. Nov. 30, 2016); *see* Edwards v. Allstate Prop. & Cas. Co., No. CIV.A. 04-2434, 2005 WL 221560, at *3 (E.D. La. Jan. 27, 2005) ("Louisiana courts and federal courts applying Louisiana law have recognized that, as a general rule, no cause of action lies against an insurance adjuster for processing and handling of an insurance claim.").

[15] *Sullivan*, 2016 WL 6995139, at *2; Motin v. Travelers Ins. Co., No. CIV.A. 03-2487, 2003 WL 22533673, at *4 (E.D. La. Nov. 4, 2003).

[16] *Sullivan*, 2016 WL 6995139, at *2.

[17] *Id.*

[18] *Id.* at *3.

She also alleges that the representatives at CNC misrepresented the coverage provided by the Policy. However, in her deposition, Plaintiff could not specifically recall which Policy terms were misrepresented to her. Plaintiff did specifically testify that a representative from CNC advised her that she did not have to file a proof of loss if she had already filed a proof of claim. She also testified that she was told incorrect information regarding how to file a claim. The evidence is clear, however, that Plaintiff did not rely on these representations because she filed four claims and submitted proofs of loss.

Finally, Plaintiff contends that prior to the inspection of her property, a representative of CNC told her that he was "on her side" and that he would find in her favor. "Whether coverage is provided or not is a matter of what the policy provides and applying applicable law, regardless of what [the adjuster] might have said."[19] This is not a case like *Pellerin v. Cashway Pharmacy*, in which the plaintiff's claim prescribed because she followed the adjuster's incorrect advice to wait to file a claim until after she was released from her doctor's care.[20] Accordingly, Plaintiff has not set forth any facts suggesting that CNC engaged in fraud or undertook an independent tort duty to her. Her claim for intentional misrepresentation fails.

### 3. *Negligent Misrepresentation*

Next, Plaintiff alleges that CNC negligently mispresented various matters to Plaintiff during the course of adjusting her claim. To succeed on a

---

[19] Cagle v. Hanover Am. Ins. Co., No. 11-0031, 2011 WL 2020241, at *3 (W.D. La. Apr. 6, 2011), *report and recommendation adopted*, No. 11-0031, 2011 WL 2037641 (W.D. La. May 24, 2011).

[20] 396 So. 2d 371 (La. App. 1 Cir. 1981).

7

claim for negligent misrepresentation under Louisiana law, Plaintiff must show:

> (1) the defendant, in the course of its business or other matters in which it had a pecuniary interest, supplied false information; (2) the defendant had a legal duty to supply correct information to the plaintiff; (3) the defendant breached its duty, which can be breached by omission as well as by affirmative misrepresentation; and (4) the plaintiff suffered damages or pecuniary loss as a result of its justifiable reliance upon the omission or affirmative misrepresentation.[21]

Here again, CNC argues that it had no legal duty to properly investigate or advise Plaintiff on her claim.  For the reasons stated above, this Court agrees, and this claim is dismissed.

### 4. Defamation

Finally, Plaintiff alleges that CNC made false, misleading, and defamatory statements regarding Plaintiff in the course of its adjustment of her claim. To succeed on a claim for defamation under Louisiana law, the Plaintiff must prove: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury."[22]

Plaintiff alleges that CNC made false statements to Selective that implied that she was committing fraud by seeking to recover for damages that her property did not sustain in the 2020 floods and that preexisted her ownership of the property. CNC argues that these alleged statements are not

---

[21] VFS US LLC v. Vaczilla Trucking, LLC, No. 15-02226, 2016 WL 3655908, at *2 (E.D. La. July 8, 2016).
[22] Finnie v. LeBlanc, 875 So. 2d 71, 79 (La. App. 3 Cir. 2004), on reh'g (July 7, 2004) (citing Fitzgerald v. Tucker, 737 So.2d 706, 715 (La. 1999)).

defamatory, and they were not published to a third party. Defendant cites to *Brunet v. Fullmer*, in which a Louisiana appellate court held that because an insurance adjuster was acting as an agent for the insurer, his communications to the insurer were "intra-corporate communications" and the publication element of defamation was not satisfied.[23] Plaintiff does not cite to any case law reaching a contrary opinion. Accordingly, this Court agrees with the reasoning of *Brunet* and finds that Plaintiff cannot prove the elements of her defamation claim against CNC. All of Plaintiff's claims against CNC are dismissed.

### C. Selective's Motion for Summary Judgment

Selective moves for summary judgment dismissal of all of Plaintiff's claims against it, arguing that Plaintiff failed to comply with the requirements of the Standard Flood Insurance Policy that it issued to her. Specifically, Selective claims that Plaintiff failed to submit the value of her claimed damages or a detailed repair estimate with any of the four proofs of loss that she submitted.

A Standard Flood Insurance Policy (SFIP) is a policy issued under the National Flood Insurance Program, which is operated by the Federal Emergency Management Agency (FEMA).[24] "A SFIP is a regulation of [FEMA], stating the conditions under which federal flood-insurance funds may be disbursed to eligible policyholders. FEMA sets the terms and conditions of all

---

[23] 777 So. 2d 1240, 1242 (La. App. 4 Cir. 2001).
[24] Marseilles Homeowners Condo. Ass'n Inc. v. Fid. Nat. Ins. Co., 542 F.3d 1053, 1054 (5th Cir. 2008).

SFIPs."[25] SFIPs may be issued directly by FEMA or through private insurers, such as Selective, as fiscal agents of the United States. "In order to recover under an SFIP, FEMA regulations require strict compliance with the SFIP itself."[26] "Under this program, an insured cannot file a lawsuit seeking further federal benefits under the policy unless the insured can show prior compliance with all policy requirements."[27] The provisions of an SFIP cannot be waived without the express written consent of the Federal Insurance Administrator.[28]

Under the SFIP issued to Plaintiff, she was required to "[p]repare an inventory of damaged property showing the quantity, description, actual cash value, and amount of loss. Attach all bills, receipts, and related documents."[29] Plaintiff's proof of loss forms did not provide this information. Indeed, Plaintiff struck through the portion of the form indicating that such information was being included. In her initial proof of loss, Plaintiff also wrote that the extent of the damage was unknown and that she would amend her proof of loss after she obtained that information. Plaintiff admitted in her deposition that she does not believe that she ever submitted a repair estimate with her proofs of loss or supplemented her claims with documentation of the loss. Accordingly, Plaintiff failed to comply with the strict policy requirements of her SFIP. Numerous courts have held such noncompliance to be fatal to claims under an SFIP policy.[30]  The "failure to provide a *complete*, sworn proof of loss statement

---

[25] *Id.*

[26] Constr. Funding, L.L.C. v. Fid. Nat. Indem. Ins. Co., 636 F. App'x 207, 209 (5th Cir. 2016).

[27] *Marseilles Homeowners Condo. Ass'n Inc. v.,* 542 F.3d at 1055; *see* 44 C.F.R. § 61.

[28] 44 C.F.R. § 61.

[29] *Id.*

[30] *See e.g., Constr. Funding, L.L.C.,* 636 F. App'x at 210 (dismissing claim for failure to "submit any substantiating documentation or explanation to support its claim"); Markey

. . . relieves the federal insurer's obligation to pay what otherwise might be a valid claim."[31] Accordingly, Plaintiff's claims against Selective are dismissed.

## CONCLUSION

For the foregoing reasons, the Motions are **GRANTED**, and all of Plaintiff's claims are **DISMISSED WITH PREJUDICE**.


New Orleans, Louisiana this 18th day of March, 2022.

_____

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

v. Louisiana Citizens Fair Plan, No. 06-5473, 2009 WL 23858, at *2 (E.D. La. Jan. 5, 2009) ("State Farm does not dispute that the Markeys submitted a timely POL; It argues that the Markeys' POL was incomplete because it did not contain documents supporting the claimed amount. The SFIP plainly requires a claimant to provide certain information in a POL, including '[s]pecifications of damaged buildings and detailed repair estimates,' as well as an 'inventory of damaged property showing the quantity, description, actual cash value, and amount of loss.' These are strict requirements. Here, the Markeys provided State Farm nothing to support the amount they claimed in their POL until filing suit. . . . But the SFIP requires claimants to submit supporting documents before suing for further benefits so that the WYO carrier can evaluate the merits of the claim. The Markeys have not done so, and their failure to document their loss before filing suit is fatal to their claim." (internal quotations and citations omitted)).

[31] *Constr. Funding, L.L.C.*, 636 F. App'x at 210.

11